UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

JENNIFER MAHER,
*on behalf of herself and those similarly situated*,

Plaintiff,

v.

NORTHLAND GROUP, INC.,

Defendant.

Civ. No. 17-2957 (KM) (JBC)

OPINION

## KEVIN MCNULTY, U.S.D.J.:

This putative class action, originally filed in state court, arises under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. The plaintiff, Jennifer Maher, held a Macy's credit card that had an outstanding balance. The complaint attaches a collection letter (the "Letter") that Northland Group, Inc. ("Northland"), a debt collector, sent to Maher. This Letter contained an allegedly misleading sentence that offered to settle the debt at a discount but "misrepresented the tax consequences" of doing so.[1]

Some 22 months into this action, Northland obtained a copy of Ms. Maher's cardholder account agreement, which contained a provision requiring arbitration of claims on an individual basis. In January 2019, Northland filed

---

[1] Items repeatedly cited will be abbreviated as follows:

Cplt. = Complaint (DE 1-2; clearer copy at DE 54-2 p.2)

Letter = Collection letter, dated March 11, 2016 (attached to complaint as exhibit; clearer copy at DE 54-2 p.13)

New Card Agreement = Notice of Change in Terms and Right to Opt Out (DE 44-5 pp. 50–53)

Arbitration Agreement = portion of New Card Agreement (DE 44-5 pp. 52–53)

1

the motion to compel arbitration that is now before the court. (DE 44) Because I find that Northland has, by nearly two years of litigation conduct, waived arbitration, its motion to compel arbitration will be denied.

## I. Background
### A. Procedural history

On March 10, 2017, the plaintiff, Ms. Maher, commenced this action by filing a complaint (DE 1-2) in the Superior Court of New Jersey, Law Division, Bergen County. The defendant, Northland, was served with the complaint on March 30, 2017. On May 1, 2017, Northland removed the action to this U.S. District Court under 28 U.S.C. § 1441(a). Because the complaint arises under a federal statute, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, this Court would have original federal-question jurisdiction under 28 U.S.C. § 1331. (DE 1)

After removal, on May 8, 2017, Northland answered the complaint. (DE 3) The following months were consumed by settlement conferences, status conferences, and the like. Written discovery did proceed, however, subject to various disputes and objections. (*See, e.g.,* DE 28 (June 27, 2018).)

On January 16, 2019, Northland filed the motion to compel arbitration (DE 44) that is now before the court. Ms. Maher has filed a response (DE 54) and Northland has filed a reply (DE 55). Both sides' submissions are accompanied by declarations with exhibits.

### B. Background Facts and Allegations
#### 1. The collection Letter

The plaintiff, Ms. Maher, had a Macy's credit card issued by Department Stores National Bank ("DNSB"), a subsidiary of Citibank. Defendant Northland is a collection agency which sought to collect the debt on DNSB's behalf. On March 11, 2016, in an attempt to collect the debt, Northland sent Maher a collection Letter. The Letter states that the outstanding balance on the credit card account is $629.10. The Letter makes a "settlement offer" of $471.84 (*i.e.,* a discount of approximately 25%).

The body of the Letter reads as follows:

> Macys has authorized an immediate settlement on the above referenced account. Your account will be considered resolved and closed if you pay the settlement of $471.94 by 04/01/2016. If you need additional time to respond to this offer, please contact us. We are not obligated to renew this offer. Upon receipt and clearance of $471.84, a letter will be sent confirming the above referenced account has been resolved. Make check payable to DSNB.
>
> This is an attempt to collect a debt by a debt collector and any information obtained will be used for that purpose.
>
> **Department Stores National Bank will report any discharge of indebtedness as required by the Internal Revenue Code and corresponding IRS regulations. Please contact your tax advisor if you have any questions.**

(Letter, DE 54-2 p. 13; **emphasis** added.)

The FDCPA claim arises from the language emphasized in **bold** type in the quotation. This language was misleading and deceptive, according to the Complaint, because it "misrepresented the tax consequences of a reduced settlement. Such statement 'does not accurately reflect the relevant law; in this respect, it is not true. In addition, the statement's invocation of the IRS is deceptive and misleading." (Cplt. ¶ 2 (quoting *Good v. Nationwide Credit, Inc.*, 55 F. Supp. 3d 742, 749–50 (E.D. Pa. 2014)).

The statement is alleged to be misleading for the following reasons:

> 21. The Department of Treasury regulations require an "applicable entity" to report a discharge of indebtedness over $600 to the Internal Revenue Services if and only if there has been an "identifiable event," subject to seven exceptions. [fn. 3, 4, and 5, citing 26 U.S.C. § 6050P(c)(1) (defining "applicable entity"); 26 Treas. Reg. § 1.6050P-1(b)(2); 26 Treas. Reg. § 1.6050P-1(a)(1), (d)]
>
> 22. Such exceptions to the reporting requirement include if the consumer files and obtains a bankruptcy discharge on a consumer debt, or if the discharge is of interest or non-principal amounts. [fn. 6, citing 26 Treas. Reg. § 1.6050P-1(d)(1)–(3)]

23. A portion of the debt allegedly to be due by Plaintiff and putative class members was interest or non-principal amounts.

24. The statement that "[the bank] will report any discharge of indebtedness as required by the internal Revenue Code and corresponding IRS regulations" is false and misleading to Plaintiff, as well as the least sophisticated consumer.

(Cplt. ¶¶ 21–24)

### 2. The Arbitration Agreement

Ms. Maher opened her Macys charge account on June 29, 2014, pursuant to an Opening Account Agreement. Her April 13, 2015, monthly account statement contained a summary of changes to the account and a copy of an amendment to the card agreement ("New Card Agreement," DE 44-5 pp. 50–53) that would take effect on August 14, 2015. The New Card Agreement provides that it will be governed by federal and South Dakota law.

Most pertinently here, the New Card Agreement contains an Arbitration Agreement. The provisions most relevant here are as follows:

*PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.*

**THIS SECTION PROVIDES THAT DISPUTES MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, HAVE A JURY TRIAL OR INITIATE OR PARTICIPATE IN A CLASS ACTION. IN ARBITRATION, DISPUTES ARE RESOLVED BY AN ARBITRATOR, NOT A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN IN COURT. THIS ARBITRATION PROVISION IS GOVERNED BY THE FEDERAL ARBITRATION ACT (FAA), AND SHALL BE INTERPRETED IN THE BROADEST WAY THE LAW WILL ALLOW.**

**Covered claims**

- You or we may arbitrate any claim, dispute or controversy between you and us arising out of or related to your account, a previous related account or our relationship (called "Claims").

- If arbitration is chosen by any party, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that Claim.

> Except as stated below, all Claims are subject to arbitration, no matter what legal theory they're based on or what remedy (damages, or injunctive or declaratory relief) they seek, including Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; Claims made regarding past, present, or future conduct; and Claims made independently or with other claims. This also includes Claims made by or against anyone connected with us or you or claims through us or you, or by someone making a claim through us or you, such as a co-applicant, authorized user, employee, agent, representative or an affiliated/parent/ subsidiary company.

(Arbitration Agreement, DE 44-5 p. 52)

The Arbitration Agreement further provides that Claims must be arbitrated on an individual, not class, basis:

> Claims brought as part of a class action, private attorney general or other representative action can be arbitrated only on an individual basis. The arbitrator has no authority to arbitrate any claim on a class or representative basis and may award relief only on an individual basis.

(*Id.*)

## II. Waiver

Maher's complaint was filed on March 10, 2017; Northland's motion to compel, however, was not filed until some 22 months later, on January 16, 2019. Maher argues that this motion to compel arbitration therefore comes too late. By participating in federal-court litigation, says Maher, Northland has waived an arbitral forum.

### A. *Ehleiter* and prejudice

The issue of whether a party has waived arbitration by litigation conduct is presumptively one to be decided by the court, not the arbitrator. *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 217–21 (3d Cir. 2007). Litigation conduct, of course, generally cannot be ascertained from the face of the complaint, as it consists primarily of matters occurring thereafter. Discovery has been ongoing in this action, and both parties have submitted affidavits with exhibits in support of their positions on this motion. I therefore analyze the submissions

5

under a Rule 56 summary judgment standard. That standard requires that relief should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986).[2]

Waiver of arbitration by litigation conduct is primarily a question of prejudice, which is assessed in light of a number of factors:

> In *Hoxworth* [*v. Blinder, Robinson & Co.*, 980 F.2d 912 (3d Cir. 1992)], we observed that "prejudice is the touchstone for determining whether the right to arbitrate has been waived" by litigation conduct. 980 F.2d at 925. After surveying the case law of our court and other circuits, we compiled a nonexclusive list of factors relevant to the prejudice inquiry: "[1] the timeliness or lack thereof of a motion to arbitrate ... [; 2] the degree to which the party seeking to compel arbitration [or to stay court proceedings pending arbitration] has contested the merits of its opponent's claims; [3] whether that party has informed its adversary of the intention to seek arbitration even if it has not yet filed a motion to stay the district court proceedings; [4] the extent of its non-merits motion practice; [5] its assent to the [trial] court's pretrial orders; and [6] the extent to which both parties have engaged in discovery." *Id.* at 926–27 (internal citations omitted). [fn. omitted]

---

[2] Waiver aside, a motion to compel arbitration will be granted where there is no genuine issue of fact, or where the decisionmaker finds factually, that (1) "a valid agreement to arbitrate exists" and (2) "the particular dispute falls within the scope of that agreement." *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005); *see also Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980). Those issues, too, are presumptively to be decided by the court. *See AT&T Techs., Inc. v. Comm'ns Workers of America*, 475 U.S. 643, 651 (1986). The parties may overcome that presumption by agreeing to commit issues of arbitrability of claims to the arbitrator, but such an agreement must be clear and unmistakable. *Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 753 (3d Cir. 2016).

In general, issues of arbitrability, when decided by the court, will be considered in the following manner. First, applying the familiar Rule 12(b)(6) motion-to-dismiss standard, the court will consider whether the issue can be resolved from the face of the complaint. If not, the court will apply a Rule 56 summary judgment standard, affording the parties the opportunity for limited discovery as appropriate. Failing that, the issue will be tried. *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 771 (3d Cir. 2013). In considering waiver, I take that approach as a guide.

*Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d at 222–23.

The prejudice requirement, however, does not entail that rights have been irretrievably lost:

> Under the *Hoxworth* test, "[w]aiver will normally be found only 'where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery.'" *Faragalli*, 61 F.3d at 1068–69 (quoting *Gavlik.*, 526 F.2d at 783). Although waiver "is not to be lightly inferred," *Great Western*, 110 F.3d at 233 (citing *Faragalli*, 61 F.3d at 1068), we will "not hesitate[ ] to hold that the right to arbitrate has been waived" where a sufficient showing of prejudice has been made by the party seeking to avoid arbitration. *Hoxworth*, 980 F.2d at 926.

*Id.*[3]

In *Ehleiter* itself, a waiver was found, under circumstances that bear some extended discussion.

---

[3] In the oft-cited (if oft-distinguished) case of *Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388 (7th Cir. 1995) (Posner, J.), the Seventh Circuit rejected a rigid requirement of prejudice. Judge Posner, placing more emphasis on procedural regularity, applied an analysis akin to that of election of remedies. *Id.* at 390 ("[W]e have deemed an election to proceed in court a waiver of a contractual right to arbitrate, without insisting on evidence of prejudice beyond what is inherent in an effort to change forums in the middle (and it needn't be the exact middle) of a litigation.")

The divergence between the Third and Seventh Circuit approaches, however, is not so great as it might appear. Under *Cabinetree*, such an initial election would give rise to no more than a "*presumptive* waiver." *Id.* (emphasis in original). Under the circumstances of a particular case, invocation of litigation procedures might not signify an election of an exclusive judicial forum. In dictum, Judge Posner posed a hypothetical case in which arbitrability is doubtful and the expiration of the statute of limitations is imminent, or one in which unexpected developments in discovery undercut the original election/waiver. The prejudice analysis, he wrote, would come into play in such an "abnormal" case:

> In such a case prejudice to the other party, the party resisting arbitration, should weigh heavily in the decision whether to send the case to arbitration, as should the diligence or lack thereof of the party seeking arbitration—did that party do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration?

*Id.* at 391.

7

The opinion in *Ehleiter* discloses that litigation had been pending for four years when the defendant first moved to compel arbitration. During that four-year delay, the parties had actively litigated the case, and trial dates had been set:

> During the intervening four-year period, the parties engaged in extensive discovery, with both sides exchanging several sets of interrogatories, requests for production of documents, and expert witness reports, as well as participating in the depositions of numerous witnesses. After the parties were unable to resolve the case in mediation, GSI filed a motion for summary judgment, requiring Ehleiter to defend his claims on the merits and inviting final resolution of the case in a judicial forum. GSI engaged in substantial non-merits motion practice as well, including filing a motion to implead a third party defendant.
>
> GSI scrupulously assented to the trial court's procedural orders. At the court's request, GSI and Ehleiter submitted a joint stipulation certifying their readiness for trial by a certain date. When the court later scheduled the case for trial, GSI promptly sought a continuance and proposed new trial dates, yet again reaffirming its amenability to judicial resolution of the parties' dispute.

*Id.* at 223.

"Although delay alone does not constitute sufficient prejudice to support waiver," the *Ehleiter* Court did find that this four-year delay "dwarf[ed]" those found acceptable in prior Third Circuit cases. *Id.* (citing *Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 598 (3d Cir. 2004) (38 days); *Wood v. Prudential Ins. Co. of Am.*, 207 F.3d 674, 680 (3d Cir.2000) (one and one half months); *PaineWebber Inc. v. Faragalli*, 61 F.3d 1063, 1069 (3d Cir. 1995) (two months); *Gavlik Constr. Co. v. H.F. Campbell Co.*, 526 F.2d 777, 783–84 (3d Cir. 1975) (motion to compel arbitration "immediately" after removal of action to federal court)).[4]

---

[4] The court also cited *Restoration Pres. Masonry, Inc. v. Grove Europe Ltd.*, 325 F.3d 54, 61 (1st Cir. 2003) (while "[t]here are no per se rules as to the length of delay necessary to amount to waiver, .... the four years' delay ..., encompassing a period of active ... litigation, greatly exceeds that found acceptable in this circuit").

8

In addition, the extent of proceedings and the proximity of trial rendered other Circuits' case law distinguishable:

> Courts have not hesitated to find waiver under similar (and arguably less egregious) circumstances. *See, e.g., Restoration Pres.*, 325 F.3d at 61–62 (waiver where, over four-year period, parties were involved in numerous depositions and pretrial conferences and trial was less than two months away); *Com–Tech Assocs. v. Computer Assocs. Int'l, Inc.*, 938 F.2d 1574, 1576–78 (2d Cir.1991) (waiver where defendant actively participated in discovery and filed dispositive motions over course of eighteen months and trial was only three months away); *S & H Contractors, Inc. v. A.J. Taft Coal Co., Inc.*, 906 F.2d 1507, 1514 (11th Cir. 1990) (waiver where defendant delayed eight months, engaging in merits and non-merits motion practice and taking several depositions in the interim).

*Id.* at 223.

*Ehleiter* identified two kinds of prejudice: One is prejudice to a party's "legal position," where, for example, a defendant reaped an unfair procedural benefit or invoked arbitration to reopen an unfavorable substantive ruling. The other, more pedestrian form of prejudice is the expenditure of time, effort, and money in prosecuting the action. *Id.* at 224. It is *not* necessary, however, to "demonstrate the presence of both types of prejudice to prevail. To the contrary, we recognized that 'where a party fails to demand arbitration during pretrial proceedings, and in the meantime, engages in pretrial activity inconsistent with an intent to arbitrate, the party later opposing . . . arbitration may more easily show that its position has been compromised, *i.e.*, prejudiced.'" *Id.*[5] The Court rejected a claim of legal prejudice, *i.e.*, that the defendants had unfairly obtained discovery unavailable in arbitration. It readily found without further evidence, however, that the plaintiff had "already invested considerable time and expense in litigating the case in court, and would be required to duplicate its efforts, to at least some degree, if the case

---

[5] Here, the Court was quoting *Hoxworth*, which in turn was quoting *Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1161 (5th Cir. 1986).

9

were now to proceed in the arbitral forum." *Id.* At least some of that discovery, the Court found, was "case-specific" and so would not inevitably have occurred elsewhere. *Id.*

Weighing the circumstances, the *Ehleiter* found sufficient prejudice and held that the defendant had waived an arbitral forum.

### B. Application of *Ehleiter* factors to this case

With that background, I consider the six *Ehleiter/Hoxworth* "prejudice" factors in relation to the facts of this case. (*See* p.6, *supra.*)

[1] *The timeliness or lack thereof of a motion to arbitrate.*

This action was commenced on March 10, 2017, by the filing of a complaint which was served on March 30, 2017. Northland filed its motion to compel arbitration on January 19, 2019. This represents a lapse of approximately 22 months. While not approaching the four-year delay in *Ehleiter*, it nevertheless far exceeds the delays found acceptable in the cases *Ehleiter* cited.

In fairness, however, I must consider Northland's proffered reasons for the delay. Northland blames the plaintiff: "Here, any alleged delay, and any asserted prejudice, resulted directly from Plaintiff's failure to produce her arbitration agreement in discovery." (Northland Reply Brf. 4) Indeed, says Northland, the plaintiff was guilty of "discovery misconduct." It was only upon receiving a copy of the New Card Agreement/Arbitration Agreement, says Northland, that it was in a position to move to compel arbitration.

It is true, as Northland says, that a motion to compel arbitration may be regarded as timely if filed "as soon as [the party] became aware that the [plaintiff's] contract contained an arbitration clause." *Schall v. Adecco U.S.A., Inc.*, No. 10-2526, 2011 U.S. Dist. LEXIS 8884, at *6-8 (E.D. Pa. Jan. 28, 2011). Still, I am not persuaded.

On August 9, 2017, Northland served discovery requests on the plaintiff, requesting documents relating to the credit card account, including account statements and card agreements. On January 17, 2018, the plaintiff responded

that she did not possess relevant documents. Over the ensuing year, in letters and conferences, the plaintiff repeated that she did not possess responsive documents. I fail to see the "misconduct." There has been no judicial ruling to that effect. At any rate, I do not find it implausible that a person would not have maintained copies of cardholder agreements.

Eventually, on January 9, 2019, Northland got around to subpoenaing DSNB for the cardholder account agreements. DSNB responded six days later with copies of, *inter alia,* the relevant Arbitration Agreement. This production, says Northland, "reveals" the existence of the agreement.[6] (DE 44-8) Days later, on January 19, 2019, Northland filed its motion to compel.

Maher points out that she sought from Northland discovery about the defense—pled by Northland, mind you—that a written agreement provided for arbitration of claims. (Decl. of Y. Kim, DE 54-1 ¶¶ 16, 18, and referenced exhibits). Northland produced nothing in response to those discovery requests, claiming that it was in "no better position than Plaintiff to obtain such information." (DE 43 p.2)

Northland's complaint that it could not have been required to obtain such documents from "out-of-state non-parties" is hyperbolic. The reference is evidently to Northland's own principal or client, DSNB (or its parent corporation, Citibank), who had every reason to cooperate.

In January 2019, when it wanted to do so, Northland obtained the relevant agreement from DSNB with ease and within days of its request. And no wonder. DSNB is Northland's principal; Northland was collecting overdue bills on DSNB's behalf. (*See* Northland Brf. ("Northland . . . was acting as DSNB's agent when it sent the Letter.")). So I am inclined to take with a grain of salt Northland's pious protestation that the Federal Rules barred it from obtaining this information, because a third-party subpoena might impose an

---

[6]   The language fails to clarify whether, in advance of this production, Northland *knew about* the Arbitration Agreement, even if it did not physically possess a copy. If it did not know about the agreement, it becomes harder to discern the basis for its pleading in its Answer that such a written agreement existed. *See infra.*

11

unnecessary "burden" on DSNB. (Northland Reply Brf. 5 (citing Fed. R. Civ. P. 45(d)(1), 26(b)(1); *Roosevelt Irrigation Dist. v. Salt River Project Agric. Improvement & Power Dist.*, No. 2:10-CV-00290-DAE-BGM, 2016 U.S. Dist. LEXIS 5674, at *71 (D. Ariz. Jan. 14, 2016) (quashing third party subpoena on the basis that it imposed an "inappropriate ... burden" where the requested documents "would also be in the possession of a party defendant")).[7]

I give little credit to Northland's pose of helplessness. I find it highly unlikely that DSNB—the creditor—would have moved to quash a subpoena from the debt collector acting on its behalf. But assume for a moment that Northland wished to first seek the documents from Maher. Even so, it learned in January 2018 that the plaintiff possessed no responsive documents. Yet Northland waited another year before serving a subpoena on DSNB. And DSNB, of course, did not move to quash, but swiftly furnished the documents within days.

All of the foregoing, moreover, ignores the real-world likelihood that Northland could have confirmed the terms of the New Cardholder Agreement/Arbitration Agreement with a phone call to DSNB. The documents, unavailable in discovery, suddenly became available when Northland wanted them. I do not propose to rule on Northland's position under the discovery rules; my point here is that Northland was less than diligent in pursuing the arbitration issue on *its own* behalf.

This factor, then, I find to be quite unfavorable to Northland.

[2] *The degree to which the party seeking to compel arbitration has contested the merits of its opponent's claims.*

True, the matter was in litigation for 22 months before the motion to compel arbitration was made. There were, however, no dispositive motions made by either side. The matter remained in the discovery stages.

---

[7] Nor has it escaped my attention that Northland has submitted with its motion a substantial affidavit from an employee of Citibank, who is conveniently voluble about the business practices of DNSB, the credit card agreements, the details of Ms. Maher's account, and so forth. (DE 44-3)

12

The docket shows motion practice over confidentiality and sealing; status conferences; written submissions in advance of a settlement conference in December 2017; entry of a schedule for discovery, with fact discovery to be completed by April 30, 2018 (DE 21, later extended); written submissions and conferences with the Magistrate Judge to resolve discovery disputes and an order for a Rule 30(b)(6) deposition (*see, e.g.*, DE 30, dated 6/28/18); further conferences and an extension of the fact discovery deadline to January 31, 2019 (DE 37).

Certainly this does not approach the *Hoxworth* "wait and see" scenario in which a defendant received an unfavorable ruling on the merits and then sought an arbitral forum in which to undo it. *See Ehleiter*, 482 F.3d at 224 (contrasting the *Hoxworth* facts). This factor, then, is more favorable to Northland. *See, e.g., FCMA, LLC v. Fujifilm Recording Media U.S.A., Inc.*, Civ. A. No. 09-4053, 2010 U.S. Dist. LEXIS 79129 (D.N.J. Aug. 5, 2010) (granting motion to compel arbitration relying in part on the defendants having filed no prior motions for affirmative relief).

[3] *Whether that party had informed its adversary of the intention to seek arbitration even if it had not yet filed a motion to stay the district court proceedings.*

On May 8, 2017, shortly after removing the case, Northland filed its answer. Among the defenses pled was the following:

> 2. Plaintiff's claims are or may be subject to binding and individual arbitration in accordance with the written arbitration agreement of the parties. Defendant therefore reserves its right to compel individual arbitration.

(DE 3 p. 10)

I give only limited weight to the Answer's early assertion of this defense. One of twenty-one affirmative defenses,[8] it bears all the indicia of boilerplate. It

---

8  They are, in brief, (1) failure to state a claim; (2) arbitration; (3) statute of limitations; (4) estoppel, release, and waiver; (5) no injury connected to acts of defendant; (6) lack of proximate or legal cause; (7) good faith; (8) lack of intent; (9) lack of injury; (10) lack of standing; (11) no entitlement to claimed damages; (12) damages

13

does not identify any "written arbitration agreement." If the defendant had any relevant information about an arbitration agreement, then presumably it would have said so, made a motion, or at least obtained a copy from its principal, DSNB. If it knew nothing about the Arbitration Agreement, then the inclusion of this defense was mere boilerplate. Pled as one among many and without any facts, this defense did not reasonably place the defendant on notice that a motion to compel arbitration was coming.[9]

Further, as discussed above, the plaintiff's efforts in discovery to ascertain the basis, if any, for this arbitrability defense were met with silence. Northland gave no indication of its intention to actually invoke arbitration until it filed its motion to compel in January 2019.

This factor, mildly favorable to Northland when the Answer is viewed in isolation, is wholly undercut by Northland's conduct.

[4] *The extent of non-merits motion practice.*

Northland began its participation in this case by removing it to federal court instead of simply moving in state court to compel arbitration. Removal, standing alone, will not establish waiver, but it can be considered as one objective indicator of intent to litigate, rather than arbitrate. *See Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 562 (7th Cir. 2008).

Once in federal court, as is typical, discovery motion practice was informal, consisting of letters, conferences, and oral argument before the Magistrate Judge. Northland participated in (1) executing a joint discovery plan, in which it stated the intent to bring various merits-based applications

---

attributable to plaintiff's fault; (13) failure to mitigate; (14) unconstitutionality of statutory damages without actual damages; (15) failure to meet Rule 23 requirements for class action, specifically: (16) numerosity/ascertainability; (17) no common question of law or fact; (18) lack of typicality; (19) inadequate representative of class; (20) individual questions predominate; (21) class action not superior. All other defenses are reserved.

[9] Nor (whether or not it is the case) would a plaintiff naturally deduce that an arbitration provision in a cardholder's agreement between herself and Macys/DSNB would cover a claim that a third-party debt collector's language in a collection letter violated the FDCPA.

14

and sought early mediation; (2) submitting an agreed discovery confidentiality order, (3) submitting joint status reports. (4) participating in five telephonic status conferences; (5) participating in a settlement conference; and (6) drafting associated written submissions.[10] At no time in the course of these proceedings did Northland raise the possibility that it would render them moot by asserting its right to arbitrate. *See also* discussion of factor [2], *supra*.

[5] *Defendant's assent to the trial court's pretrial orders.*

Northland complied with pretrial orders. Where deadlines loomed, the parties sought and obtained revised schedules from the Magistrate Judge. The parties seemingly were on schedule to complete discovery under the amended pretrial scheduling order. Of course I do not fault Northland or its counsel for their professionalism. The point here is that Northland gave every objective indication that it intended to litigate the matter in court.

[6] *The extent to which both parties have engaged in discovery.*

Discovery seems to have been substantial. To all appearances, fact discovery was within weeks of completion at the time Northland filed its motion to compel arbitration (at which time further discovery was stayed).

A joint submission from late December 2018 gives some idea of the scope of issues outstanding on the eve of the motion to compel arbitration. (DE 43) In that letter, Northland implies that, setting aside a few disputed items, fact discovery is in a "late stage" and should be nearly finished: "Defendant remains willing to provide the information if Plaintiff will agree that it will satisfy Defendant's discovery obligations and no further information will be requested at this late stage." (DE 43 p. 5)

As of that time, the close of fact discovery was scheduled for January 31, 2019, about a month in the future. (DE 37) It was just two to three weeks in advance of that deadline that Northland requested and obtained the documents from DSNB, and then filed its motion to compel arbitration. At Northland's

---

[10] I note that the stay of discovery pending the settlement conference was relatively brief, and was lifted the day after the conference. (*See* DE 18, 21)

request, further discovery was stayed pending the determination of its motion to compel arbitration. (DE 48)

As a factor, cases have considered whether the defendant prolonged its stay in court in order to receive discovery to which it would not have been entitled in arbitration. This particular factor does not tip strongly either way. No unfair advantage to the defendant is apparent; indeed, the plaintiff does not seem to have possessed much in the way of discoverable material at all. Any discovery relating to class issues presumably would not have occurred in arbitration, which was to proceed on an individual basis. Still, it would have been plaintiff, not defendant, who sought class treatment and class-based discovery; the defendant had no incentive to delay its request for arbitration and expose itself to such federal-court discovery demands. In short, the most that can be said is that there was some waste of time and energy.

*   *   *

Balancing all of the factors, I find that Northland, by its litigation conduct, has waived arbitration. I do not say that this is an egregious case: the delay is 22 months, not four years; Northland pled the existence of an arbitration agreement as an affirmative defense in its answer; Northland did not have physical possession of the relevant Agreement; and there have been no rulings on the merits of the case.

Still, I give greater weight to the following factors:

(a)   Northland at all times, beginning with its notice of removal, participated in the case in a manner that conveyed intent to litigate in court and oppose class certification (which, under the Arbitration Agreement, would presumptively have not been an issue).

(b)   The defense of arbitrability was pled in a boilerplate manner, as one of 21 affirmative defenses.

(c)   The delay of 22 months in bringing the motion to compel arbitration was substantial.

(d)   Fact discovery was on the brink of completion when Northland subpoenaed the Arbitration Agreement from its client, DSNB, in January 2019.

(e)     Northland resisted the plaintiff's request for discovery regarding the basis of its arbitration defense, claiming that the documents were not in its control.

(f)     Northland nevertheless easily obtained the Arbitration Agreement within days after service of a subpoena on DSNB, and its arguments regarding the difficulty of doing smack of *post hoc* rationalization.

(g)     Indeed, the Arbitration Agreement could probably have been obtained for the asking at any time, as Northland's principal, DNSB, had every incentive to cooperate.

(h)     Some expenditure of time and money in litigation may, as in *Ehleiter* itself, be presumed, and some limited amount of that expenditure might not have occurred in arbitration of Ms. Maher's claim on an individual basis.

"Under the *Hoxworth* test, [w]aiver will normally be found only where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery." *Ehleiter*, 482 F.3d at 222–23 (internal quotations omitted). Here, there are additional factors at play, including a lack of diligence by Northland that borders on willfulness. I therefore find that Northland has, by its participation in this litigation, waived its right to compel arbitration of Ms. Maher's claims.

I close with a few words about issues not being discussed or decided here. First, the only agreement before the court is that of Ms. Maher; I do not speculate about other cardholders' agreements. Second, because the matter will not be referred to arbitration, I will deny as moot the defendant's motion for a stay of this action under the FAA, 9 U.S.C. § 3. Third, arbitration having been waived, I do not reach the remaining issues regarding the scope and enforceability of the Arbitration Agreement.

## CONCLUSION

For the reasons stated above, the motion of the defendant, Northland, to compel arbitration and stay this action (DE 44) is DENIED. An appropriate order accompanies this opinion.

Dated: July 19, 2019

Hon. Kevin McNulty
United States District Judge