# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

JENNIFER MAHER, *on behalf of herself and those similarly situated,*

    Plaintiff,

v.

NORTHLAND GROUP, INC. and JOHN DOES 1 TO 10,

    Defendants.

Civ. No. 17-2957 (KM) (JBC)

**OPINION and ORDER**

**KEVIN MCNULTY, U.S.D.J.:**

    Defendant Northland Group, Inc., by this motion (DE 62), seeks reconsideration of this Court's opinion (DE 60) and order (DE 61) denying its motion to compel arbitration (DE 44) of the claims brought against it by plaintiff Jennifer Maher.[1] For the following reasons, the motion is **DENIED**. I write for the parties and do not repeat my prior analysis; familiarity with the matter is assumed.

    The standards governing a motion for reconsideration are well settled. *See generally* D.N.J. Loc. Civ. R. 7.1(i). Reconsideration is an "extraordinary remedy," to be granted "sparingly." *NL Indus. Inc. v. Commercial Union Ins. Co.*, 935 F. Supp. 513, 516 (D.N.J. 1996). Generally, reconsideration is granted in three scenarios: (1) when there has been an intervening change in the law; (2) when new evidence has become available; or (3) when necessary to correct a clear error of law or to prevent manifest injustice. *See N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995); *Carmichael v. Everson*, No. 3-4787, 2004 WL 1587894 at *1 (D.N.J. May 21, 2004). Local Rule 7.1(i) requires such a motion to specifically identify "the matter or controlling

---

[1] "DE __" refers to the docket entry number in this case.

decisions which the party believes the Judge or Magistrate Judge has overlooked." *Id.*; *see also Egloff v. N.J. Air Nat'l Guard*, 684 F. Supp. 1275, 1279 (D.N.J. 1988). Evidence or arguments that were available at the time of the original decision will not support a motion for reconsideration. *Damiano v. Sony Music Entm't, Inc.*, 975 F. Supp. 623, 636 (D.N.J. 1997); *see also N. River Ins. Co.*, 52 F.3d at 1218; *Bapu Corp. v. Choice Hotels Int'l, Inc.*, No. 7-5938, 2010 WL 5418972 at *4 (D.N.J. Dec. 23, 2010) (citing *P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*, 161 F. Supp. 2d 349, 352 (D.N.J. 2001)).

In support of its motion, Northland alleges the following errors:
- A. The Court Improperly Based its Conclusion on Northland's Purported Lack of Credibility
- B. The Court Improperly Placed the Burden on Northland to Pursue Third-Party Discovery
- C. The Court Misapplied the *Hoxworth*[2] Factors
    1. The Court Erred In Calculating The Purported "Delay" To Be Twenty-Two Months
    2. The Court Improperly Discounts Northland's Well-Pleaded Defense of Arbitration
    3. The Court Adds Undue Weight to the Fourth and Fifth Hoxworth Factors Based on the Purported Extent of the Alleged Delay
    4. The Court's Analysis of the Extent of Discovery Conducted is Erroneous
- D. The Court Failed to Consider the Card Agreement's "No Waiver" Provision

(DE 62-2 at 6–18). For the following reasons, none of these claims concern evidence that was not available or improperly addressed in the prior opinion. Nor has there been manifest injustice or an intervening change in the law.

---

[2] *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912 (3d Cir. 1992)

2

A. Reliance on Northland's credibility

By concluding that the opinion improperly made credibility determinations, (DE 62-2 at 6–7) Northland misinterprets the opinion, because those findings arose from the fact-intensive waiver-by-litigation analysis required in this Circuit. *See Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 217 (3d Cir. 2007).

In fact, the opinion does not assess the credibility of Northland's evidence on the merits. Instead, the analysis focuses on Northland's *litigation conduct* with respect to the *Hoxworth* analysis—namely the timeliness of the motion to compel arbitration and the notice afforded to Maher of Northland's intention to invoke arbitration. (DE 60 at 10–14). Such an analysis is precisely what *Hoxworth* requires:

> The issue of whether a party has waived arbitration by litigation conduct is presumptively one to be decided by the court, not the arbitrator. . . Litigation conduct, of course, generally cannot be ascertained from the face of the complaint, as it consists primarily of matters occurring thereafter. . . .
>
> Waiver of arbitration by litigation conduct is primarily a question of prejudice, which is assessed in light of a number of factors . . . .

(DE 60 at 5–6 (citing *Ehleiter*, 482 F.3d at 217—23)).

Because these determinations were based primarily on matters of procedural history and occurred within the context of the *Hoxworth* analysis, it was not improper to consider Northland's litigation conduct that demonstrated its implied waiver of arbitrability.

B. "Burdening" Northland with third-party discovery

In attacking the opinion's observation that Northland could have obtained the cardholder agreement at any time and applying an overly formalistic interpretation of the litigation-by-waiver doctrine, the company again misunderstands the upshot of the opinion:

> The Court's finding that Northland had the ability to obtain this information – and that it presumably was in a better position to obtain it than Plaintiff herself -- is not supported by the record. . . .

3

> Nor does the Court's view reflect the realities of the consumer
> finance and debt collection industries, in which privacy laws and
> concerns limit the records that creditors may provide voluntarily.
> Similarly unfounded is the Court's conclusion that creditors
> "ha[ve] every reason to cooperate" with such requests, which
> assumes that creditors are willing to participate voluntarily in
> third-party litigation and to bear the cost and expense of complying
> with both informal document requests and subpoenas. There was
> no support in the record for this conclusion. Moreover, logic
> dictates that non-party creditors (such as DSNB) instead would be
> reluctant to voluntarily provide account information for every
> account they refer out for collection. Accordingly, the Court's
> conclusion is not supported by the facts in the record, and does
> not correlate with the realities of Northland's business practices.

(DE 62-2 at 7–8).

The fact is that none of these barriers presented themselves. Northland *was* able to obtain the agreement, privacy laws apparently did *not* limit the records that DSNB could provide, and Maher's creditor revealed itself to be *willing and able* to cooperate with Northland's discovery request. Finally, logic does not dictate that creditors would be reluctant to provide account information for every account they refer to collection. It is not unreasonable to expect a creditor to provide its agent with the contract on which it seeks to recover. Assigning a matter for collection cannot be a means of shielding the very information on which the entitlement depends.

   C. The *Hoxworth* factors

      1. Calculating the twenty-two-month delay

Northland argues that it was error to attribute to it the entire the twenty-two-month delay between filing the complaint and subpoenaing DSNB. (DE 62-2 at 10–11). But that is not the case. The opinion clearly notes that the delay attributable to Northland—substantial nonetheless—was not the entire twenty-two-month period between the complaint and the motion to compel arbitration:

> On August 9, 2017, Northland served discovery requests on the
> plaintiff, requesting documents relating to the credit card account,
> including account statements and card agreements. On January
> 17, 2018, the plaintiff responded that she did not possess relevant

4

> documents. Over the ensuing year, in letters and conferences, the plaintiff repeated that she did not possess responsive documents. . . . I do not find it implausible that a person would not have maintained copies of cardholder agreements.
>
> Eventually, on January 9, 2019, Northland got around to subpoenaing DSNB for the cardholder account agreements. DSNB responded six days later with copies of, *inter alia*, the relevant Arbitration Agreement. This production, says Northland, "reveals" the existence of the agreement. Days later, on January 19, 2019, Northland filed its motion to compel.

(DE 60 at 10–11 (footnotes and citations omitted)). The opinion further notes that Northland itself did not produce the cardholder agreement in response to Maher's similar discovery request. (DE 11).

In any event, the twelve-month period between when Northland learned that Maher did not have the agreement and when it finally subpoenaed the same from its principal are entirely attributable to Northland. And twelve months still dwarfs the acceptable delay periods cited in *Ehleiter* and this Court's prior opinion. 482 F.3d at 223 (citing *Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 598 (3d Cir. 2004) (38 days); *Wood v. Prudential Ins. Co. of Am.*, 207 F.3d 674, 680 (3d Cir. 2000) (1½ months); *PaineWebber Inc. v. Faragalli*, 61 F.3d 1063, 1069 (3d Cir. 1995) (two months); *Gavlik Constr. Co. H.F. Campbell Co.*, 526 F.2d 777, 783–84 (3d Cir. 1975) (defendant moved for stay pending arbitration "immediately" after removing the action to federal court)); *see also* (DE 60 at 8 (citing same)). Accordingly, the calculation of the delay attributable to Northland was not erroneous.

2. Northland's plea of arbitration as an affirmative defense

Northland takes issue with the opinion's characterization that its affirmative defense of arbitration resembles boilerplate language. (DE 62-2 at 11–12). Indeed, Northland now argues that "courts in the Third Circuit have recognized that disclosing arbitration as a defense is an effective means of satisfying this factor." (DE 62-2 at 11). It further argues that the opinion focused too closely on the plausibility requirement of Fed. R. Civ. P. 8(a) at the

cost of the "fair notice of the issue involved" standard that Fed. R. Civ. P. 8(c) imposes on affirmative defenses.

But that argument misses the mark. As the opinion explains, the issue is not whether Northland plausibly alleged the existence of an arbitration agreement but that the sheer volume of its affirmative defenses (twenty-one in total)[3] drowned out the significance of each individual one. In other words, even though Northland pled, among many other things, "arbitration," Maher was not reasonably notified that an agreement existed and a motion to compel arbitration was forthcoming. Indeed, Northland gave no indication of its intention to actually invoke arbitration until it filed its motion to compel in January 2019. The opinion therefore did not improperly discount Northland's affirmative defense.

3. Relative weight of the fourth and fifth *Hoxworth* factors

Northland charges that the opinion "erroneously injected its view of the extent of delay (factor one) into" factors four and five (the extent of non-merits motion practice and defendant's assent to the trial court's pretrial orders). (DE 62-2 at 12–13). At best, this argument is a disagreement about the weight given to each—non-exhaustive—*Hoxworth* factor. To the contrary, the opinion considers each factor as it relates to prejudice—the ultimate object of the analysis and the nearly dispositive element of the waiver-by-litigation doctrine. *See Ehleiter*, 482 F.3d at 222–23. Northland's argument on this point does not present any of the permissible scenarios for reconsideration. *See N. River Ins. Co*, 52 F.3d at 1218.

---

[3] They are (1) failure to state a claim; (2) arbitration; (3) statute of limitations; (4) estoppel, release, and waiver; (5) no injury connected to acts of defendant; (6) lack of proximate or legal cause; (7) good faith; (8) lack of intent; (9) lack of injury; (10) lack of standing; (11) no entitlement to claimed damages; (12) damages attributable to plaintiff's fault; (13) failure to mitigate; (14) unconstitutionality of statutory damages without actual damages; (15) failure to meet Rule 23 requirements for class action, specifically: (16) numerosity/ascertainability; (17) no common question of law or fact; (18) lack of typicality; (19) inadequate representative of class; (20) individual questions predominate; and (21) class action not superior.

4. Extent of completed discovery

Northland insists that it was improper for the opinion to determine that that discovery was on the brink of completion. It notes that no depositions had yet taken place and that Maher had further reserved the right to take class-related discovery. (DE 62-2 at 14). However, the opinion's treatment of this topic does not lend itself to Northland's interpretation:

> Discovery seems to have been substantial. To all appearances, fact discovery was within weeks of completion at the time Northland filed its motion to compel arbitration (at which time further discovery was stayed).
>
> . . .
>
> As of that time, the close of fact discovery was scheduled for January 31, 2019, about a month in the future. It was just two to three weeks in advance of that deadline that Northland requested and obtained the documents from DSNB, and then filed its motion to compel arbitration. *At Northland's request, further discovery was stayed pending the determination of its motion to compel arbitration.*

(DE 60 at 15–16 (citations omitted; emphasis added)). Discovery was nearly over when Northland requested its suspension. If anything, Northland brought the present state of discovery upon itself, and its argument—like the relative weight of factors four and five, discussed *supra*—does not amount to an error of law or fact or manifest injustice.

D. The card agreement's "no waiver" provision

Northland alleges that the opinion does not account for the arbitration agreement's no-waiver clause. (DE 62-5 at 15). Further, it points to a state-court decision published approximately two weeks after this Court's opinion was issued:

> As the South Dakota Supreme Court recently affirmed, South Dakota law[4] recognizes the validity of such provisions, through which parties may be precluded from raising the defense of waiver.

---

[4] The cardholder agreement provides that it will be governed by federal and South Dakota law. (DE 44-5 at 50–53).

7

(DE 62-2 at 15–16 (citing *Wachter Dev., Inc. v. Martin*, 2019 ND 202, ¶¶ 25–26 (N.D. Jul. 30, 2019) ("[E]ven if the Martins had demonstrated a waiver of the no fence restriction, they were bound by the 'no waiver' provision in the [agreement.] . . . The 'no waiver' provision unambiguously provides a waiver of a violation of a restriction will not be considered a waiver of any subsequent violation. Because the [agreement] applies to the Martins' property, [they] are bound by the instrument and are precluded from claiming Wachter waived the no fence restriction.")).

First, the opinion relied upon by Northland, *Wachter Development, Inc. v. Martin*, 931 N.W.2d 698 (N.D. 2019), stems from the *North* Dakota Supreme Court and is not applicable in this case, which turns on South Dakota law. Second, to the extent that that court's holding is relevant, it does not represent "an intervening change in the law," because the court merely restated existing legal principles. *N. River Ins. Co.*, 52 F.3d at 1218; *Carmichael*, No. 3-4787, 2004 WL 1587894 at *1. Third, the no-waiver provision is limited to complaints, answers, counterclaims, motions, and discovery. It cannot be used circumvent an unjustified delay in seeking arbitration, because the reality is that "a party may be prejudiced by the unnecessary delay or expense that results when an opponent delays invocation of its contractual right to arbitrate." *Ehleiter*, 482 F.3d at 225 (quoting *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 131 (2d Cir. 1997)). Fourth, I would be extremely reluctant to hold that a party's inclusion of no-waiver language insulates it from this court's policing of the litigation process.

Here, Northland's delay in asserting its right to arbitrate threatened to prejudice Maher's position in the proceeding. Finally, Northland neglected to raise the no-waiver argument in its motion to compel arbitration, and therefore its characterization that the opinion failed to consider it is erroneous. Northland should not expect the Court to construct arguments on its behalf. Nor should it, on a motion for reconsideration, attempt to litigate the arguments for the first time. *See Damiano*, 975 F. Supp. at 636.

**ORDER**

Accordingly, for the reasons set forth above,

IT IS this 19th day of March 2018

ORDERED that the motion of defendant Northland Group, Inc. for reconsideration (DE 62) of the Court's opinion (DE 60) and order (DE 61) is **DENIED**.

s/ Kevin McNulty
_____
**Hon. Kevin McNulty
United States District Judge**